The document below is hereby signed.

Signed: May 25, 2011



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                             )
                                  )   Case No. 10-01094
ROBERT MARK MORDKIN,              )   (Chapter 7)
                                  )
        Debtor.                   )   **For publication in West's**
                                  )   **Bankruptcy Reporter.**

MEMORANDUM DECISION RE AMENDED OBJECTION OF
<u>ALPINE BANK TO DEBTOR'S CLAIM OF EXEMPTIONS (SCHEDULE C)</u>

This addresses the objection of Alpine Bank to the debtor's exemption pursuant to D.C. Code § 16-572 of certain unpaid compensation.  For the reasons that follow, I will sustain Alpine Bank's objection.

I

On November 3, 2011, the debtor commenced the above-captioned case under chapter 7 of the Bankruptcy Code and filed his schedules (Dkt. No. 1).  Pursuant to § 522(b) of the Bankruptcy Code, a debtor may exempt from the bankruptcy estate either (1) the property enumerated under § 522(d) of the Bankruptcy Code, unless prohibited by state law, or (2) property exempted by non-bankruptcy federal law and state and local law. The debtor has opted for the non-bankruptcy-law exemptions.  In

his Schedule C, the debtor sought to exempt from the bankruptcy estate "Contractual additional compensation receivable from employer for January - October, 2010. Contingent upon Debtor's performance under executory employment contract" pursuant to D.C. Code §§ 15-501(a)(3) and 16-572.[1]  He has later reported that the additional compensation has been fixed at $42,740.24.

Alpine Bank concedes that $8,075 of the compensation is exempt under § 15-501(a)(3), but has filed an objection to the exemption under § 16-572 on the basis that the "additional compensation" does not fall within the definition of wages or compensation under § 16-572 but, instead, was a "profit-sharing distribution" falling outside the scope of the statute.  On February 11, 2011, I issued a Memorandum Decision and Order to Show Cause wherein I called into question whether § 16-572 was an exemption available in bankruptcy in the first instance, and provided the parties with an opportunity to brief the issue.  Both parties submitted briefs.  I conclude that § 16-572 is unavailable as an exemption in bankruptcy.

---

[1] For purposes of this memorandum decision I will assume, without deciding, that the debtor's claimed exemption of "Contractual additional compensation receivable from employer for January - October, 2010. Contingent upon Debtor's performance under executory employment contract" falls within the purview of § 16-572.

II

In determining whether § 16-572 is an exemption available under District of Columbia law, I look first to the plain meaning of the statute's language. *District of Columbia v. American University*, 2 A.3d 175, 186 (D.C. 2010). "[I]f it is clear and unambiguous and will not produce an absurd result, [the court] will look no further." *Beaner v. United States*, 845 A.2d 525, 534 (D.C. 2004). Importantly, "[b]y delving into the legislative history before establishing that the statutory language is ambiguous, [a court] violates a fundamental principle of statutory interpretation." *Id.* Accordingly, I turn first to the language of § 16-572 itself.

Section 16-572 of the District of Columbia Code provides as follows:

> Notwithstanding any other provision of subchapter II of this chapter, where an attachment is levied upon wages due a judgment debtor from an employer-garnishee, the attachment shall become a lien and a continuing levy upon the gross wages due or to become due to the judgment debtor for the amount specified in the attachment to the extent of:
> (1) 25 per centum of his disposable wages that week, or
> (2) the amount by which his disposable wages for that week exceed thirty times the federal minimum hourly wages prescribed by section 6(a)(1) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206) in effect at the time the wages are payable,
> whichever is less. In the case of wages for any pay period other than a week, the Mayor of the District of Columbia shall by regulation prescribe a multiple of the federal minimum hourly wage equivalent in effect to that set forth in paragraph (2).

> The levy shall be a continuing levy until the judgment, interest, and costs thereof are fully satisfied and paid, and in no event may moneys be withheld, by the employer-garnishee from the judgment debtor, in amounts greater than those prescribed by this section. Only one attachment upon the wages of a judgment debtor may be satisfied at one time. Where more than one attachment is issued upon the wages of the same judgment debtor and served upon the same employer-garnishee, the attachment first delivered to the marshal shall have priority, and all subsequent attachments shall be satisfied in the order of priority set forth in section 16-507.

As relevant to this case, § 16-571(3) defines "garnishment" as "any legal or equitable procedure through which the wages of any individual are required to be withheld for payment of any debt." Under 11 U.S.C. § 541, however, a debtor's right to unpaid wages becomes property of the estate (upon the filing of the debtor's bankruptcy petition) without the necessity of invocation of any procedure requiring the employer to withhold the wages for payment of any debt. Section 16-572 deals with a judgment creditor's attachment of wages, and bankruptcy does not act as an attachment on behalf of a judgment creditor.[2] The intervention of a bankruptcy case, accordingly, is not a garnishment, and, in the context of § 16-572 in particular, is not an attachment on an employer-garnishee.

The issue, therefore, is whether § 16-572 can be invoked as

---

[2] A trustee has the rights and powers of a hypothetical judgment creditor under 11 U.S.C. § 544(a), but that provision is aimed at giving the trustee superior rights as against parties other than the debtor. As to the debtor, § 541 provides all the trustee needs to make the debtor's unpaid wages property of the estate.

4

a provision exempting the wages from the property of the estate in a bankruptcy case. The plain language of § 16-572 compels the conclusion that it is not an exemption statute.

First, the language of § 16-572 speaks in terms of garnishment, not exemption. Section 16-572 is in Subchapter III of Chapter 5 of Title 16 of the D.C. Code. Chapter 5 deals entirely with attachments and garnishments, and Subchapters I and II deal with attachment and garnishment generally, and attachment and garnishment after judgment in aid of execution, respectively. Subchapter III addresses the narrow issue of attachment and garnishment of wages. Expectedly, then, § 16-572 employs terms like "judgment debtor," "employer-garnishee," and "attachment."

Second, and relatedly, nowhere in § 16-572 are the words "exempt" or "exemption" used, words the D.C. Code's drafters used to clearly create exemptions elsewhere in the D.C. Code. Section 15-501, for example, is captioned "Exempt property of householder; property in transitu; debt for wages." Further, the text of § 15-501 begins with "The following property . . . is free and exempt from distraint, attachment, levy, seizure and sale on execution or decree of any court in the District of Columbia." Likewise, § 15-503(a) similarly provides that certain "earnings (other than wages . . .), insurance, annuities, or pension or retirement payments . . . are exempt from attachment, levy, seizure, or sale upon the process, and may not be seized,

levied on, taken, reached, or sold by process or proceedings of any court, judge or other officer of and in the District." *See also* § 15-503(b) (providing an additional exemption for earnings, insurance, etc. and an exemption for apparel and mechanics tools). It is significant that, for example, under § 15-503(a) some earnings, other than wages, "are exempt from attachment" and that § 16-572, in contrast, addresses the extent to which wages are protected from the effects of an attachment but is silent regarding the extent to which they are exempt from being reached in proceedings of any court. While the fact that neither "exemption" nor "exempt" appears in § 16-572 is not determinative of whether § 16-572 provides an exemption, *see In re Davis*, 275 B.R. 134, 137 (Bankr. D.D.C. 2002), it is indicative that it does not.

Taken together, § 16-572's focus on attachment and its lack of "exemption" language, lead me to conclude that the provision unambiguously is not an exemption statute under the D.C. Code.

Notwithstanding the plain language of the statute, the debtor contends that the portion of § 16-572 which states that an attachment on wages only becomes a lien or levy to the extent of the lesser of (1) 25 percent of the debtor's disposable wages or (2) the amount the debtor's wages exceed thirty times the federal minimum wage provides a basis for exemption. Debtor's reliance on this language, however, is misplaced.

Section 16-572 only provides the extent to which an attachment becomes a lien or levy on wages due while in the hands of the debtor's employer; it does not speak to the extent to which the entirety of those wages, when in the hands of the debtor or a different third party, would be subject to creditors' claims.  If, for example, a judgment debtor were to receive wages and were to deposit them into a bank account or were to use them to purchase securities or other property, nothing in § 16-572 (or Title 16 of the D.C. Code, for that matter) would prevent the judgment creditor from obtaining a writ of attachment on the bank account or other property acquired.  In other words, all § 16-572 does is to regulate the method by which a creditor may satisfy its debt through attachment on the debtor's employer to seize unpaid wages, not to place wages, when received, beyond the reach of creditors.  When a creditor executes on wages that a judgment debtor has received, however, the judgment debtor would be entitled to claim any applicable exemption under D.C. Code § 15-501 or otherwise pursuant to the procedures of D.C. Code §§ 15-521 to 15-523.

Similarly, when the unpaid wages become property of a bankruptcy estate and no longer the debtor's property, nothing in § 16-572 places the wages beyond the reach of creditors, although the debtor may claim applicable exemptions under D.C. Code

§ 15-501 or otherwise.[3] The result is the same whether the wages remain unpaid as of the filing of the petition or were received by the debtor the moment before the filing of the petition. In either event, the wages are property of the estate unaffected by § 16-572. To paraphrase *Smith v. Frazier*, 421 B.R. 513, 518 (S.D. Ill. 2009):

> Stated simply, once [Mordkin] sought bankruptcy protection, the Bankruptcy Code and applicable state and federal property exemption statutes governed [his] rights and remedies--not the limitation on garnishment contained in [D.C. Code § 16-572].

At the oral argument in this matter, the debtor's counsel contended that viewing the language of § 16-572 as plain and unambiguous would produce an anomalous result. He pointed to D.C. Code § 15-503(c), which provides:

> Notwithstanding any other provision of law, the wages . . . of any person not residing in the District of Columbia who does not earn the major portion of such wages in the District of Columbia shall, in any case arising out of a contract or transaction entered into outside of the District of Columbia, be exempt from attachment, levy, or seizure, by any process or proceeding of any court, judge, or officer of the District of Columbia in the same amount and to the same extent as is provided by the law of the State in which such person resides for persons residing therein. Whenever any claim is made for an exemption from attachment pursuant to this subsection, the burden shall be upon the plaintiff to prove that the contractor transaction involved in the case was entered into within the District of Columbia.

---

[3] As already noted, Alpine Bank concedes that $8,075 of the amounts at issue has been properly exempted under D.C. Code § 15-501(a)(3).

8

He contended that it makes no sense for a non-resident to be entitled to exempt wages to the extent exempted from garnishment in her state of residence but to deny the right to residents of the District of Columbia to exempt wages that are immune from garnishment under § 16-572.  He thus contends that § 16-572 must have been intended to be an exemption statute.  This argument is unpersuasive.  All that § 15-503(c) does is to permit an non-resident (in certain circumstances), "in the same amount and to the same extent as is provided by the law of the State in which such person resides," to "exempt from attachment, levy, or seizure, by any process or proceeding of any court, judge, or officer of the District of Columbia" her wages.  In those cases in which it is applicable, § 15-503(c) does not provide that the debtor can exempt in bankruptcy whatever wages would be exempt from attachment under the law of her residence.  Exemption from attachment and exemption from a bankruptcy estate are two different concepts.[4]  Accordingly, the alleged anomaly

---

[4] Some states' garnishment restrictions have been construed as intended to serve also as an exemption of the wages in bankruptcy cases.  I need not decide whether § 15-503(c) permits exemption in bankruptcy of wages that, under such a state's law, could be exempted from a bankruptcy estate.  Even if that is the case, § 15-503(c) does not provide that whatever wages are exempt from attachment in the debtor's state of residence are automatically exemptible from the debtor's bankruptcy estate.  In other words, when the wages are *not* exemptible in bankruptcy under the law of the debtor's state of residence, § 15-503(c) can not serve to make exemptible in bankruptcy the portion of the wages that would be exempt from attachment.

9

articulated by the debtor is nonexistent.

### III

Even were I to find the language of § 16-572 ambiguous with respect to whether it provides for an exemption available to debtors in bankruptcy, the legislative history underlying the provision is at best neutral on the limited issue addressed here.

The wage garnishment limitations now set forth in § 16-572, with differences of no relevance here, were originally enacted in 1959. H.R. Res. 836, 86th Cong., Pub. L. 86-130, 73 Stat. 275 (1959).[5] Congress enacted the bill in reaction to the shortfalls in the then-existing exemption scheme available under the D.C. Code. The House Report on the bill explains the rationale:

> Under existing law in the District of Columbia a judgment creditor may issue an attachment of a debtor's wages called a garnishment, which garnishment requires that the employer withhold all of the debtor's wages until it can be judicially determined how much of the attached wages should be turned over to the creditor.
> Under existing law if an exemption is claimed the debtor is required to file a written claim of exemption which claim is set down for a hearing in open court at which the debtor must be present. During the time this hearing is pending the entire wages are still held up.
> The exemption provided for under present law is unworkable and economically unsound in that the majority of defendants never take advantage of it, and it promotes a coercive influence on defendants due to the holdup of the defendant's salary until the litigation is determined.
> . . . .
> The purpose of H.R. 836 is to provide an attachment on wages of a judgment debtor's earnings to

---

[5] Prior to the Home Rule Act of 1973, 87 Stat. 777, District of Columbia statutes were enacted by Congress.

>the extent of 10 percent of gross wages not exceeding $200 per month, 20 percent of gross wages over $200 but not exceeding $500 per month, and 50 percent of gross wages exceeding $500 per month, until the judgment is fully paid.

H. Rep. No. 86-263, at 2 (1959); *see also* S. Rep. No 86-459, at 1-2 (1959) (echoing the language from the House Report).

As part of this new wage garnishment limitation, Congress also removed the then-existing wage exemption. Prior to this act, § 15-403 (current § 15-503) provided for a $200 per month exemption of earnings and salary for the two months "preceding the issuing of any writ or process against him . . . ." House Resolution 836 removed the term "salary" from the exemption and limited the exemption, as relevant here, to "earnings (other than wages, as defined in section 1104A) . . ." (existing § 16-571). As the Senate Report explains, the purpose of this change was to "clarif[y] existing law in that **it clearly takes salaries and wages out of the present exemption statute**." S. Rep. 86-459 at 4 (1959) (emphasis added).

Unlike the former version of § 15-403 (the precursor to current § 15-503), which had limited the exemption of earnings and salary for the two months preceding the issuance of an attachment, § 16-572 significantly does not include any limitation on the number of months of wages that are entitled to the protections of § 16-572. If Congress had intended § 16-572 to be an exemption statute, it is likely that it would have

continued to include such a limitation.  This is additional evidence that § 16-572 was not intended to be an exemption statute.

This case well illustrates that point.  The debtor is attempting to exempt "[c]ontractual additional compensation receivable from employer for January - October, 2010."  The debtor reports that the additional compensation has been fixed at $42,740.24, with 75% of that (or $32,055.18) being claimed to be exempt under § 16-572.  If a two-month limitation were applicable under § 16-572, the amount protected would have been 75% of the compensation applicable to the last two of the ten months, which works out to 15% of the $42,740.24 (assuming that proration applies) or only $6,411.04.  It is unlikely that Congress would have intended that § 16-572 could be used as an exemption statute when it lacked any months-of-wages-limitation like old § 15-403 (the precursor to current § 15-503).

The next substantive amendment to § 16-572 occurred in 1971, when the provision reached its present form.[6]  That amendment was part of the D.C. Consumer Credit Protection Act of 1971, 85 Stat.

---

[6] In 1963 Congress undertook a complete overhaul of the D.C. Code.  77 Stat. 555 (1963).  The only change to the garnishment provision at issue here, however, was a change from its numbering as D.C. Code § 15-218 to its current numbering, § 16-572.  Subsequent amendments were technical.

12

678 (1971),[7] a bill primarily directed towards increasing usury caps in the District for direct installment loans, direct car loans, and small loan transactions, H. Rep. 92-724 (1971).  In that Act, Congress amended § 16-572 to its present form: the lesser of (1) 25 percent of a debtor's disposable income or (2) the amount by which a debtor's disposable income exceeded thirty times the federal minimum wage.  85 Stat. 678-679 (1971).  Importantly, the Senate version of the Bill, S.R. 1938, 92nd Cong. (1st Sess. 1971), kept the previous scheme in place, save for lowering the amount a creditor was allowed to garnish from a judgment debtor's wages from 50% of the debtor's wages in excess of $500 to 25% beyond this amount.  The House Committee, however, rewrote § 16-572 to its present form.  In its report, the House Committee stated that this amendment of the bill was merely "a restatement of the provisions of the Truth and [sic] Lending Act [sic] relating to the proportion of wages of an employee which may become subject to attachment."  The Truth in Lending Act (TILA)[8], enacted as title I of the Consumer Credit Protection Act[9], contains no provisions relating to garnishment.  Instead, it appears that the House Report was referring to Title III of

---

[7]    This is not to be confused with the federal Consumer Credit Protection Act, which, as explained below, has a provision identical to the one at issue in this case.

[8]    As amended, TILA is found at 15 U.S.C. § 1601, *et seq.*

[9]    Pub. L. No. 90-321, 82 Stat. 146 (1968).

the same Consumer Credit Protection Act, the title entitled "Restriction of Garnishment," which contained a provision (now codified as 15 U.S.C. § 1673) which is nearly identical to D.C. Code § 16-572.

In 1974, the Supreme Court had occasion to address the issue of whether the wage garnishment provision in the federal Consumer Credit Protection Act (15 U.S.C. § 1673), after which the current version of § 16-572 was modeled, was an exemption available in bankruptcy. Answering that question in the negative, the Supreme Court found that in enacting the provision

> Congress' concern was not the administration of a bankrupt's estate but the prevention of bankruptcy in the first place by eliminating "an essential element in the predatory extension of credit resulting in a disruption of employment, production as well as consumption" and a consequent increase in personal bankruptcies. Noting that the evidence before the Committee "clearly established a causal connection between harsh garnishment laws and high levels of personal bankruptcies," the House Report concluded:
>> "The limitations on the garnishment of wages adopted by your committee, while permitting the continued orderly payment of consumer debts, will relieve countless honest debtors driven by economic desperation from plunging into bankruptcy in order to preserve their employment and insure a continued means of support for themselves and their families." H. Rep. 1040, 90th Cong., 1st Sess., 21 (1967).

*Kokoszka v. Belford*, 417 U.S. 642, 650 (1974). The current version of § 16-572 was enacted three years after the enactment in the federal Consumer Credit Protection Act of 15 U.S.C. § 1673, the federal counterpart of § 16-572 that the Court

addressed in *Kokoszka*.

In his response to the court's Order to Show Cause, the debtor argues that the court is not bound by the Supreme Court's decision in *Kokoszka*. I agree. The *Kokoszka* decision is not binding on this court inasmuch as it did not determine whether D.C. Code § 16-572 provides an exemption available in bankruptcy; the *Kokoszka* decision solely addressed Congress's intent in enacting the federal Consumer Credit Protection Act. That said, however, the *Kokoszka* decision is persuasive evidence that Congress did not intend to create an exemption when it revised § 16-572 in 1971, merely three years after it enacted the federal Consumer Credit Protection Act. Moreover, the fact that the House Report explicitly stated that the 1971 amendment to § 16-572 was to make it consistent with the garnishment provision in the federal Consumer Credit Protection Act further buttresses this point.

Conversely, however, I cannot say that the legislative history underlying the 1971 amendment shows that Congress intended to remove any exemption that already existed (if the exemption was not eliminated by the amendments in 1959). An important distinction between the garnishment provision in the federal Consumer Credit Protection Act and the 1971 amendment to D.C. Code § 16-572 is that the federal garnishment provision was created from whole cloth. Section 16-572, in contrast, was a

15

revision of a garnishment provision that itself stemmed from a statute this court today recognizes as an exemption available in bankruptcy.  If Congress intended to retain the wage exemption, albeit in a different form, when it created the precursor to § 16-572 in 1959, it is hard to say that the 1971 amendment to § 16-572 was intended to do anything other than bring § 16-572 in line with the garnishment provision in the federal Consumer Credit Protection Act.  Thus, the 1971 amendment is at most neutral.  The Supreme Court's decision in *Kokoszka* is persuasive evidence that Congress did not intend to create an exemption with the 1971 amendment, but that does not end the inquiry.  In other words, the more critical inquiry is what Congress intended when it enacted the precursor to § 16-572 in 1959.

Relatedly, the debtor next argues that *Kokozska is* irrelevant because the precursor to § 16-572 was enacted in 1959, prior to the garnishment provision in the federal Consumer Credit Protection Act, and Congress could have had an entirely different intent in 1959.  Again, I agree.  Theoretically, when Congress created the precursor to § 16-572 and removed "wages" from the previous $200 exemption in § 15-403 (now § 15-503) it might not have intended to get rid of the wage exemption all together, but rather to maintain the exemption, albeit in a different form.  Nevertheless, *Kokoszka* is evidence that when Congress affords protection of wages in only a provision that deals with

garnishments, no exemption arises from that provision absent identification of statutory policies that differed from those examined in *Kokoszka*.[10]  The debtor has not shown any cogent reason for treating § 16-572 any differently than the statute addressed in *Kokoszka*.

The most reasonable interpretation of the legislative history of § 16-572 is that Congress intended to get rid of the wage exemption altogether in favor of a different kind of protection.  The House Report on the precursor to § 16-572 states that Congress made the amendment because the "exemption provided for under present law [was] unworkable and economically unsound . . . ."  H. Rep. No. 86-263, at 2 (1959).  Likewise, the Senate Report states that purpose of removing the term "wages" from § 15-403 was to "clarif[y] existing law in that it clearly takes salaries and wages out of the present exemption statute."  S. Rep. 86-459 at 4 (1959).  Admittedly, both Reports' use of the word "present" suggests that Congress *may* have been exempting the wages elsewhere, but nowhere in the Reports did Congress treat the predecessor to § 16-572 as an exemption statute.  For the reasons previously explained, nothing in § 16-572 prevents a

---

[10]  Similarly, when a state's statute affords protection of wages in only a provision that deals with garnishments, courts hold that the statute does not create an exemption absent identification of statutory policies that differed from those examined in *Kokoszka*.  *See In re Riendeau*, 293 B.R. 832 (D. Vt. 2002), *aff'd*, 336 F.3d 78 (2nd Cir. 2003).

creditor from attaching the debtor's wages once they are in his hands (or deposited in his bank account), and the most plausible reading of Congress's statement that it was taking "salaries and wages out of the present exemption statute" is that it intended to provide salaries and wages a different kind of protection. An exemption is only one type of protection legislatures can create to protect debtors from overreaching by creditors. The most reasonable interpretation of the legislative history of the 1959 amendment is to find that Congress opted to exchange one type of debtor protection for another. Unfortunately for this debtor, it is not a type of protection recognized in bankruptcy.

The best that can be said in the debtor's favor is that the legislative history underlying § 16-572 and its precursor is arguably ambiguous. Nothing in the legislative history suggests that the statutory policies that led to the holding in *Kokoszka* were not prevailing in Congress mind as well when it enacted the precursor to § 16-572 in 1959. And, in any event, § 16-572 is unambiguously not an exemption provision, such that the discussion of legislative history is academic. For these reasons, the court will sustain the objection to the debtor's § 16-572 exemption.

A separate order follows.

[Signed and dated above.]

Copies to: Debtor; Debtor's Attorney; Chapter 7 Trustee; Brian F. Kenney and Margeaux Witherspoon, attorneys for Alpine Bank.